The Honorable, the Judges of the United States Court of Appeals for the 8th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 8th Circuit is now in session. All persons having business before this Honorable Court may now draw near and they will be heard. God save the United States and this Honorable Court. First case for argument this morning, case number 19-2096 Western Arkansas, Human Rights Defense Center et al. v. Baxter County Arkansas. Good morning counsel. We're here under unusual circumstances but it worked effectively yesterday and for our panels last month. My only comment is if something goes wrong speak up or if you can't understand one of the judges. It's not informal but we need to be efficient and helpful. So Mr. Kalinowski if you're ready so are we. Thank you Your Honor. Good morning Your Honors and may it please the Court. My name is Cesar Kalinowski and I represent Appellant Human Rights Defense Center in this matter. Since the invention of prisons and parchment, the importance of exchanging letters and books with inmates cannot be understated. From St. Paul's letters recorded in Colossians to Dr. King's letter for Birmingham Jail, history reflects the value of this discourse. For almost the first time in mankind, Baxter County claims it must pay contraband by placing a total ban on letters, newspapers, and books. Applying the four-factor test required by the and hold the Baxter County's policy violates HRDC's First and Fourteenth Amendment rights. Is it a total ban? I'm sorry Your Honor I couldn't hear both of you at the same time. I apologize. Well you referenced a total ban. I thought I didn't think we were talking about a ban on all publications being in inmate cells. Does the record show that's what's in fact the policy? Yes Your Honor with the exception simply of religious texts in which Sheriff Montgomery said that there were prisoners that could get a Bible or Koran if they were brought in. Otherwise no books, letters, or magazines, newspapers can be sent through the mail. The prisoners cannot receive them through any other means. In fact HRDC did call to determine whether or not they could send them. They were told that there was no means for HRDC to send its books. So a family member could not visit the jail and bring a bring a publication that the inmate could then have in his or her cell? No Your Honor and the inmates don't even have access to a fiction reading or any other sort of reading. Where in the record do I confirm that because I didn't think that was that we were talking about that brought a a prohibition here? Absolutely Your Honor. It is in fact and in the record. One moment Your Honor. I'm not hearing Mr. Kalinowski. Mr. Kalinowski your mic is muted. I apologize. In the record it does reflect that the jail the jail did did not allow any books whatsoever and the and I apologize Your Honor. It is in in our briefing but there's no no fiction reading and the law library is limited to four books and the only books that were allowed in the library that can be brought in are religious books if brought in by an inmate's visitor. And so here this is particularly important under the second factor which is the alternatives that HRDC has for its particular expression and that would be the difference in between this case and a case like Simpson. And before we're getting into the factors Your Honors I would point out that in light of Baxter County's repeated assertions in the lower court and here on appeal that this court's opinion in Simpson permanently authorizes postcard only policies HRDC would emphasize that this court must conduct an independent review of all evidence in the case. Counsel before we get to that I'd like to ask you whether this is an as applied challenge or a facial challenge. It could be both Your Honor. Baxter County is partially correct that previous case law can dispose of a matter but that's where the restriction is so severe as to be facially invalid and this court discussed that in Sisney. This and other courts have struck down total bans on all literature from a publisher before as facially invalid. In fact twice before Turner this court struck down total bans in Wiggins and Murphy and twice again after Turner in Griffin and Williams. And in fact that just as the Supreme Court noted in Martinez and this court noted in Griffin the fact that Baxter is almost alone in feeling the need to justify a total ban is highly relevant to the inquiry. Now with other circuits explicitly foreclosed similar total bans but even federal prisoners in ADX Supermax at the Bureau of Prisons in Florence and those in death row at Arkansas's Varner Supermax they still have access to HRDC's literature. So on this basis alone the court can and should hold that Baxter County's policy which is a total ban is facially unconstitutional. So let me ask you one more preliminary question if I could. I'd like you to tell me the nature and scope of the asserted constitutional right here. Is it simply is it communication in general? Is it more specific? Is it the right to communicate information to inmates? I think it's important that we have the parameters of what is the constitutional right that that is being claimed here. Absolutely your honor. The constitutional right here is HRDC's right to communicate with prisoners under the First Amendment. And HRDC has a right as in the court Supreme Court said this in Thurnberg and every other court to recognize that individuals on the outside have their own independent right to communicate with inmates. For and this goes back to the exact same second factor for considering what the ban does and the impact on those asserted rights you also have to look at the plaintiff here a publisher's means of expression. For HRDC's particular speech there are no feasible alternatives like there were for the mother in Simpson and in the absence of feasible alternatives is evidence that the regulation is unreasonable. The profit alternatives that we have from the lower court are not only unreasonable but they're also absurd and contrary to the jail zone professed interests. I think Judge Loken has already focused on this but to me the key issue in this case is what Judge Loken identified is whether this is an outright ban or not. And so what I would ask you is from the perspective of HRDC how is this policy any different than a total ban? It is the exact same and that's why we would say it's facially invalid your honor and to address Judge Loken's earlier request question at appellate 87 within the record the appendix 87 is where HRDC had we confirmed in testimony at a trial that HRDC had attempted to send in its own literature and was rebuffed and that the appendix 121 is where the sheriff confirmed that other than religious books brought in by inmates visitors that no other books would be allowed in. Well now what I just heard you say is it's not a total ban across the board it's a total it's effectively a total ban for HRDC. That's a very different issue. Well because we're the plaintiff here your honor obviously we're asserting our rights here so we would say it's a total ban on all of HRDC but we would also say that it's a total ban on every other publisher in the United States as well. Publishers do not print books on postcards and in particular. Publishers can be subject to to reasonable Turner restraints that other other components of society are not. Absolutely your honor and and there are reasonable restraints that every other jail has has been able to put in that doesn't effectively operate as a total ban and under the fourth factor. Every other jail wait wait wait wait this is a small this is a small jail that houses that I understand it mostly short-term with detainees or and or inmates. This is not like the Hennepin County Jail it's a block and a half from my courthouse or major jails in New York City. So when you say every other jail that that to me is is not a helpful assertion. Well your honor not only is the Supreme Court said that we do look at what we can look at what other jails do but this court has said it in Griffin. In fact this court said that we can only say that the conflict between the policies described here and the policies followed with respect to other inmates and at other penitentiaries should give the officials pause. Now we mark we exclude that Simpson so so and but but just for the where in the record is there evidence submitted by HRDC of of similarly situated jails with different policies? Your honor we did present and as part of our the fourth factor we did present reasonable alternatives and we presented reasonable alternatives with regard to specific and general general jails. I asked you for I asked you for evidence we've had a trial here. Yes your honor. We're dealing with a trial record. Yes your honor. Where in the trial record is either evidence of similarly situated jail policies or the exclusion of that evidence? At appendix 283 to 284 Sheriff Montgomery testified in particular about one of the ready alternatives that the court ignored and that he in fact had ignored but was aware of and at at that site 283 to 284 Sheriff Montgomery discusses that he was personally familiar with free successful feasible alternatives like the tablet reading system that had been launched in Union City and he still didn't consider those whatsoever and like the first factor where we get to look at whether or not there was a reasonable alternative to the jail policy. He said that their decision pre during and post implementation is arbitrary and that's the most important here we see every single phase of this implementation of this policy, it's arbitrary and it's irrational as related to the legitimate in a logical interests. They initially the jail invoked only 2 reasons for its regulation first as a security precaution to decrease the amount of income in contraband and second as a cost-saving measure for the county which has to supply postage for indigent inmates. Aren't those very similar to the rationales that were cited in Simpson that the judge found very compelling the judges found very compelling in the case? Yes your honor they were very similar and honestly they're very similar to the legitimate penological interest that every single institution always claims or their penological interests and why they need to restrict an inmate's first amendment or otherwise rights. The difference here though is that just as I spoke earlier about the independent review that the court must take what another in the jail did or what was upheld there and that wasn't that issue was not exactly challenged they only challenged there that nothing had happened in the past in Simpson and that was why the policy was arbitrary whereas here we see at every single phase the policy was arbitrary as rolled out implemented and otherwise it was adopted. Pardon me but how does the policy exactly I mean you're stressing that this is a total ban and that it's very different from what other other courts have done with total bans. How does this total ban differ from what was at issue in Simpson? At issue in Simpson and the biggest difference there is the plaintiff and the right at issue and the plaintiff in Simpson was a mother. So I'm sorry so the policy itself was was similar identical were there relevant differences in the actual policy implemented by the jail? There were a handful of relevant differences some of which apply to the 14th amendment and whether or not the policy itself was vague as to who was within the policy as far as the restriction on jail as it is here in Baxter County your honor. So counsel isn't this really an as-applied challenge? There is a second as-applied challenge as well here your honor and that is because of as I was saying earlier all of the arbitrary and irrational evidence of arbitrary and irrational nature of this policy. There was no investigation or review regarding actual concerns with the contraband that's at appendix 210 and 220. There was no review of the mailroom procedures at all 210 to 211. No review of the inefficiencies or costs or cost-saving measures 220 to 211. That sounded like your due process claim a little more focused frankly the due process claim doesn't interest me very much which doesn't mean I don't have to decide it. I'm not saying it's a it's an easy issue but we're questioning so far the focus has been on the first amendment and I think Judge question was how is this is that you're effectively making a first amendment as-applied challenge because the only difference policy-wise is the nature of the plaintiff and you're asserting that that in order to apply these this policy you have to take into account the nature of the plan. I would say that your honor that's the essence of your argument right? I would say that your could have been a facial challenge as well but that argument wasn't made there and in this circuit arguments that are made aren't considered part of the decision. But more to the point it's controlling on our it's controlling on our panel. You could have preserved the issue and raised it to the court and bank but I don't think you did. I'm sorry in which case your honor? Simpson. Uh I didn't or we didn't argue Simpson your honor uh but no no no you just said they could have argued in Simpson and a facial challenge and they didn't. Yes your honor. And was rejected and so you could have raised it here but not to our panel. Did you raise it? Did you preserve it for the in-bank court? A facial challenge? Here your honor in this case or in Simpson. Yes yes your honor we did bring it up at trial as both a facial challenge and an as applied challenge and in response to. Wait wait I don't think you understand the difference. I mean you just told you just told Judge Pitlick that there's no difference in the policy as defended. Uh yes your honor. And you know it's you you you you're I don't okay we have we have to sort these distinctions are essential and I think you have not sufficiently clarified them and in your apologies your honor let me tell them the way you presented the case. Uh yes your honor so the the policy itself is not indistinguishable but it's fairly factually similar in that it operates as a total ban on letters, newspapers, books, and magazines. If the Simpson plaintiff had challenged it as facial they could have made that argument they didn't the court didn't the it was decided only as an as applied under the facts based on that plaintiff. Counselor yes if I could counsel let me ask you why isn't the prison library an available alternative means of communication for your client? Well not only does my client not have access to that prison library and there's no means to donate or otherwise it's going to be requested to see if we could send some in but that prison library also is not it serves the purpose of assisting the prisoners with their legal but it's obviously deficient it also doesn't necessarily cover the in total range of all our dc all of HRDC's expression HR legal treatise but it also does monthly publications does special publications so not all of them would fall within the strictly legal law library category nor does it need to because HRDC still has a right to communicate even if it wasn't political or advocacy speech it still has a right to communicate that speech and given the complexity of the issues it would be impossible to reduce the contents of that legal speech into postcards or would flood the jail with thousands of postcards it's exactly the very thing that the jail allegedly seeks to avoid nor can HRDC call every inmate every month and so as an as applied challenge there's still there are no feasible alternatives for this particular plaintiff plus you know as a facial challenge there's no alternatives for any similarly situated plaintiff publisher or otherwise because they do not have feasible alternatives in this jail so under this policy HRDC could not donate its magazines to the prison library and allow the inmates to review them at that facility your honor when when HRDC called and followed up regarding the policy was told that there was no means of sending its books and again at trial the Montgomery confirmed that there were no means other than individuals bringing in the sheriff had also testified that there had been a light reading a light reading library as well that possibly had donations however at trial is uncovered that that light reading library had not actually been in the jail for a number of years what would be a sufficient alternative in your view what kinds of constraints would be constitutional well your honor a total ban is unconstitutional but we but we would say that given the number of feasible alternatives here that's evidence not only is evidence of the fact that this is an arbitrary and unreasonable exaggerated response but a publisher only rule is very effective and was shown effective we discussed it repeatedly at trial the Supreme Court discussed it in bell the the court as well as the sheriff acknowledged and discussed the free tablet reading systems that were launched elsewhere that the jail wouldn't even have to pay for and honestly your honor returning to the old policy would not decrease efficiency it would not have any more real impact on the actual jails operation given the facts of this case any further questions i'd like to reserve the rest of my time but i'm happy to answer very good thank you thank you your honor mr owens Mr. Owens, please unmute your mic. I apologize, I was muted so I wouldn't make any noise. Please record, my name is Jason Owens, I represent Maxwell County, Arkansas in this case. This is the county's position in this case. I think you're going too far away from your mic it's it's fading. I apologize, your honor. We're all we're all experimenting with this. Thank you, your honor. It is, of course, the county's position in this case that Simpson not only fired, but is maimed and so forth as a matter of law. As a matter of law, Simpson concluded that We're still having trouble with your audio clarity. Is this better? So far, yes, much better. Better? Is that better? Yes. Okay, I'll try to proceed. I apologize and I'll try to speak up if you have any more issues please just let me know and I'll try to speak up. In Simpson, the court held that institutional security and efficiency were both legitimate interests for a phenological facility. The plaintiff, HRDC in this case, has conceded that those are legitimate interest at page 18 of their brief. In addition to conceding that cost savings is a legitimate interest. The HRDC can test whether those are reasonably related with the postcard policy. Mr. Owens, I appreciate if you'd get to what our back and forth with Mr. Kalinowski on on what difference the plaintiff makes, the nature of the plaintiff makes to the constitutional analysis. And how that difference may affect this case because to that extent, Simpson is not controlling. Yes, Your Honor. In Simpson, as well as in a case in the Western District of Arkansas, Rashid v. City of Texarkana, the plaintiff was a parent of an inmate who attempted to communicate. In both cases, this court upheld the postcard policy. Here, HRDC is a non-profit group from Florida who is sending almost purely commercial speech into the jail. Let's assume the plaintiff is Time Magazine. Speaking on behalf of a class of non-profit and for-profit publishers. Yes, Your Honor. The Supreme Court has repeatedly held that commercial speech is entitled to less protection than other forms of speech. That's a very dangerous argument. That argument has almost withered on the vine. It remains, to my understanding, the law of the U.S. Supreme Court. The plaintiff, HRDC, the appellant here, has essentially asserted that it has a greater constitutional right to communicate with prisoners to effectuate its fundraising and profit-based motivations through, again, almost purely commercial speech. Counsel, if I could, let me get right to the point. From the perspective of HRDC, why is this not a total ban? Well, Mr. Kalinowski explained that the right at issue was the ability to communicate. The same ability to communicate exists here as existed in Simpson and Rashid. Wait a minute. So that means that their publications attempting to assist inmates to understand and assert their legal rights, which can only be done in some sort of book or pamphlet form, that means that those pamphlets are allowed in an individual detainee or inmate cell, right? But he says that's not the case. So answer that one for me. Respectfully, Your Honor, I think the premise that legal advice or tips or information can only be shared through large booklets and publications is erroneous. Lawyers call their clients in jails every day. That doesn't answer it. I asked you a fact question with respect to your policy. Can their publications, I'm more familiar with Charles Coulson's organization's efforts in this regard. Yes, Your Honor. It is valid and sincere and constructive. And so to the extent that they can't be done by personal visits, obviously, or postcards. So can those material, that type of material, somehow get into an individual detainee's cell in your client's jail? Your Honor. Yes or no? Yes or no. Judge Brooks held that it was unclear because the plaintiff had not made its case on that point. In footnote 17 of its opinion after the bench trial, Judge Brooks said that there was no evidence that HRDC had made a request to donate any of its materials to the jail. I'm not talking donating. I'm not talking about how HRDC does it. I'm talking about what's the policy? Is this a ban on books and pamphlets and magazines? No, Your Honor. Because the only thing that's allowed in jail for your client's policy reasons are postcards. No, Your Honor, and Judge Brooks didn't find that it was as a factual matter. Okay, so where in the trial record do I confirm that? Our document confirms that this is not a total ban on magazines, pamphlets, and books being in the individual detainee's cell. Well, Sheriff John Montgomery testified that there's a law library at the jail, that there was a book cart that relatives would contribute to. In fact, HRDC alleged that somehow we were being inconsistent, that the jail was being inconsistent because newspapers were allowed for certain inmates in certain contexts. And now they're claiming that this is a total ban. That is simply incorrect as a matter of fact, and of course, Judge Brooks found all these facts as the fact finder. This was a bench trial. Counsel, how do we square that with what appears to be a policy that says postcards only? Well, postcards only with respect to mail, directly to inmates. Again, HRDC made no inquiry about whether they could donate to a central repository like the law library, like the book cart. There's no evidence in the record of that, and Judge Brooks pointed that out as part of his analysis on alternative means. Again, he's the fact finder. There's been no clear error in the entirety of this appeal. There's been no clear error alleged with respect to any of Judge Brooks' fact findings. He found, as a matter of fact, that this was not a total ban. That it was not even censorship. But instead that it was a content-neutral regulation intended to effectuate these legitimate penological interests that had been conceded as legitimate by HRDC. But, Counsel, wasn't that factual finding predicated on such things as in-person visits and phone calls? Well, certainly those are alternative means of communication. Not to this client. They certainly are, Your Honor. The only word used in that context in Turner and his progeny is the word available. Although HRDC would like it to be the word feasible or ideal or suited to a particular non-profit company in Florida, that's not the word used by Turner and his progeny. The word is available. How are they supposed to arrange an in-person visit? How is HRDC supposed to arrange an in-person visit? In the same manner as anyone else. They call the jail and schedule it. And we'll be allowed to visit. They can also make a phone call and arrange those things. They can send a postcard and ask for the inmate to schedule a visitation. They can do any of those things. And have done none of them. There was no evidence presented at the trial that they even attempted to avail themselves of any of these alternative means in any form. Counsel, if an alternative means of communication is impractical or impossible or economically infeasible, how is that different than a de facto ban? Well, again, those are the three that were brought up in Simpson. And so Judge Brooks certainly centered and focused on those. Because those have already been approved as available alternative means in a binding case. I certainly think they're available to the point of fear. I think they're a lot less impractical than HRDC would let on. There's no reason why they can't pick up the phone and call these inmates. Arrange a visitation. Send a postcard. Magazine and publication companies routinely send postcards. I don't receive them in my house. Asking me to subscribe to a particular magazine or publication. But they're on postcards. Whenever you read a magazine, the postcard falls out asking you to subscribe. But they can ask them to subscribe all they want. When the magazine gets sent, they won't be able to receive it. Correct? Well, it would be a different case. These were all unsolicited mailings. That's another important point here. They're claiming this dramatic First Amendment right that's greater than the right of a mother to speak to her son in the jail. And yet, all of these mailings are conceitedly unsolicited. None of these inmates have ever requested that these be sent. And additionally, have never complained about not receiving them. Or any other publications. Does that affect whether HRDC has a right to make the attempt to initiate contact with the inmates? Well, they may initiate contact with inmates in any of several different ways. They haven't attempted to do that other than through their preferred ideal method. At least ideal in their perspective. That's the only attempt they've ever made. There was unilateral testimony. Judge Brooks gave credit to that testimony from their executive director. He made a phone call to his choir about mailing to inmates. The executive director didn't testify. He didn't even talk to. Which creates some hearsay problems. It's unclear, again, exactly how Judge Brooks analyzed that factual question. But he did say, Judge Brooks did specifically say, that there was no testimony, no evidence in the record, that they had ever attempted or made any effort to donate any of their materials to the repository for all inmates. Okay, can you tell me more about the newspaper and the law library that the inmates have access to, that you suggested might have been, if they had tried to donate, maybe they would have been able to access inmates in that method. My understanding was that those were far more limited than the way it sounded when you described them. The law library, to my understanding, contained the Arkansas court rules, the federal rules of civil appellate, and other federal rules, the large federal rule book that most of us have sitting on our desk with all the various federal rules. And I believe the Arkansas criminal code, which is a two or three volume set, the most pertinent information for any prisoner. Again, HRDC has made no effort or attempt to donate to that repository at any time. Is there any policy of allowing outside groups to donate to that repository? I'm not sure that there was any evidence of that at trial, one way or the other. And of course, it's difficult to say what the policy of the county is with respect to an event that's never occurred. Counsel, you seem to be arguing that they should follow some unwritten policy rather than the written policy. Well, the written policy applies to mail directly to the inmates going into the jail. One of the allegations in this case was about notice and the opportunity to be heard, yet they never attempted to avail themselves by making a phone call. There's no evidence. Sheriff Montgomery testified that he never got a call from anyone with HRDC. There's just no evidence of any of that. There was no attempt made. Judge Brooks found that as a matter of fact, but it's certainly not a clearly erroneous factual finding. That wasn't even asserted by HRDC in this field. This court found that there is a common sense, and the question isn't even subjective on this point. The question is an objective test. Is there a rational connection? This court found in Simpson that there is a rational connection between the post-court only policy and the important, in fact, the primary most important interest of any jail, which is to maintain institutional security. Contraband is a daily battle for jails and prisons. The Supreme Court has counseled broad ranging deference for decisions meant to deal with that problem. This court has held that there is a common sense connection between a post-court only mail policy and that interest. This court has also held that there is a common sense connection, again, an objective connection, which is what the law requires, allows for no inquiry into subjective intentions, but an objective connection between this policy and institutional efficiency. Sorry, there are two other factors. I mean, there are three other factors besides the rational connection. Two of them involve talking about factually whether there are alternatives that could serve the interests of the claimant here or of the prisoner without too much additional cost to the... Well, one is whether there's alternative means, which we've been discussing, and the other is whether there's an alternative that would also accommodate the penological interests without treading so much on the rights of the plaintiffs here. So I haven't heard you address whether there's another way to do what you're trying to do without significantly more cost to the prison. Yes, Your Honor. Respectfully, in Jones v. North Carolina Prison Laborers Union, a case cited in this court's Holloway v. Magnus opinion, the Supreme Court held that losing cost advantages, in other words, the fact that the available means are more expensive, doesn't implicate free speech rights. The question is availability. It's not a question of cost effectiveness. It's not a question of whether it's ideal or feasible to use the language HRDC is used here. There are certainly the three available means that were affirmed in Simpson, phone calls, visits, and postcard communication, none of which have been utilized by HRDC or even attempted. Also, Judge Brooks brought up the question of donation to a central repository. Again, not even attempted by HRDC in this case. But would a publisher-only rule or another less restrictive rule cost the prison that much more to implement? Yes, Your Honor. Well, it would. The last two questions are whether there's an irreparable effect and whether an alternative policy would have implications for the jail,  Judge Brooks held, as did this court in Simpson, that allowing particularly mass mailings, but even in Simpson, allowing envelopes into the jail would implicate this primary security concern in addition to what HRDC has admitted are real, as a factual matter, real cost savings and efficiency concerns. HRDC in its testimony at the trial in this case admitted that it takes longer to sort mail and certainly would take much longer to sort the large volume of mass mailings that HRDC sent and intends to send in this case and moving forward if allowed. Right, you still have to sort the mail now, right? You have to sort out all of these mailings that are sent and you have to stamp them and return them to sender with an explanation of why they were rejected. Is that correct? To my knowledge, there's no particular sorting done at this point. Anything that's not a postcard gets stamped and sent back. Anything that is a postcard gets delivered as addressed after a quick visual review. That visual review also, Judge Brooks credited this in terms of the facts, that visual review of postcards has caught contraband coming into the jail, which Judge Brooks credited in his factual review of this case and said was important, that it strengthened the county's position because it showed the effectiveness of, even though the county doesn't have to do that in this case, it showed the efficacy of this policy in that it actually intercepted contraband. The other important point that this court made in Simpson and that Judge Brooks agreed with is that any increase in the ability for contraband to enter the facility is a dramatic impingement on the jail. And certainly, this court found that there were significantly more hiding places in envelopes and letters from families in Simpson. That risk would only be exponentially greater if mass mailings from publishers were allowed with the bindings, staples, etc. that come with those large-scale publications, not to mention the larger envelopes and everything else that comes with sorting through all of this. The other piece is that these publications are loaded with advertisements that are problematic in a jail setting. Advertisements for pornographic images, erotic pen pal services, and things of that nature that create all these problems. Now, this is a content-neutral policy, but if you're arguing for an alternative that allows for publishers to do this, you're thrown into the fire, from the kettle into the fire, of having to figure out what content is appropriate and what isn't, which dramatically reduces the efficiency of mail operations. Do you do content review of the postcards? Only summary to determine whether escape plans are in the offing or things of that nature. And I see my time is up. Are there further questions? Thank you, Your Honor. Briefly, Your Honor, to respond to Mr. Owens, a few points. First, HRDC repeatedly invoked the clear air in the lower courts, ruling on a number of various grounds. First, and contrary to Mr. Owens' assertions, HRDC did, in fact, call. And at Appendix 192, at 15, Mr. Wright testified that the jail told Kathy Moses, one of HRDC's employees, that there was nothing that HRDC could do to get its material delivered. Again, at Appendix 226, Sheriff Montgomery confirmed at trial that no publisher, whether it's Amazon or otherwise, can send books, leisure books, anything. And at Appendix 217, he confirmed that only religious books... Those are minor things, relatively. Let me ask you, before I go read the trial record, which I haven't done, will I find that HRDC made an attempt to distinguish various types of mailings with respect to the policy, or was it across the board, all or nothing? Yes, it was tried. As Mr. Owens describes the findings, they did not distinguish between solicitations to join our group or pay subscriptions versus getting helpful books and pamphlets into the inmates' hands. Was it an across-the-board trial? We did present evidence across the board, and this is part of the problem with both Baxter County's argument, Your Honor, as well as the lower court's ruling. So therefore, it seems to me you raised the risk that that's the only issue we have to decide is across the board. You either get everything or we affirm. In other words, you brought the wrong case. Why isn't that a legitimate reaction to particularly this argument this morning? Well, Your Honor, and maybe I misunderstood your question. When I say that HRDC applied across the board, we both applied to facial and as-applied challenge, and we discussed the fact that... How did you do the as-applied? Did you insist to the extent you could that the judge make a finding with respect to the various kinds of mailings you wish to be able to do? Yes, Your Honor, and the lower court did have a clear factual record on that. Where do I look to confirm that you presented an issue that was not the way the judge decided the case, and therefore that's fair game on appeal? We did that, Your Honor, on every single one of the Turner factors, and there are discrepancies with the lower court, but here we did present evidence that each of these different publications and each of HRDC's means of expression is different. It comes with different First Amendment considerations, Were there pre-trial statements by the parties as to what the issues to be tried? Yes, Your Honor, there was multiple rounds of summary judgments and... No, no, no, no, no, I'm talking about a standard pre-trial order which many district judges, in my experience, require to define the issues that you're presenting for trial. Yes, Your Honor, I believe so. Okay, so I can go look at those, and yours will make it clear that the court has to distinguish between postcard solicitations to join our wonderful group versus publications that you think the inmates need access to. Well, HRDC would have a First Amendment right for any of its speech, Your Honor, but because Baxter County's mail restrictions... They would not be treated the same under Turner, in my view. I'm sorry, they would not be treated the same as what... They would not run through the Turner factors the same. An envelope mailing which is to solicit subscribers to join our group because we have this wonderful effort going on nationwide versus publications that we think would be helpful to you in your present condition as a detainee or an inmate. They're all within HRDC's right, Your Honor, and they do reflect different expressive rights of HRDC. I understand, but was the district court asked to do a separate Turner analysis for the different kinds of things you want, the different kinds of mailings you wish to have constitutionally protected? Not necessarily individual ones, but as HRDC's rights as a publisher of books, magazines, and newspapers. I think you're going to rise or fall by the case you brought. Understood, Your Honor. For all the reasons we provided, we would ask this court again to reverse the lower court's First and Fourteenth Amendment rulings and affirm HRDC's rights. Thank you all. Thank you, counsel. It's an interesting and it's a complex case, and our argument has certainly helped me figure out what I need to study. We will take it under advisement, and thank you for good arguments and interesting technology or experiments. Well done. Thank you. Thank you.